UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

YAN LIN,

          Petitioner,

   -v-

LADEON FRANCIS, *Acting Field Office Director of New York, Immigration and Customs Enforcement*, et al.,

          Defendants.

------------------------------------------------------------

25 Civ. 10001 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On December 2, 2025, petitioner Yan Lin, a noncitizen, was arrested at LaGuardia Airport by Immigration and Customs Enforcement ("ICE") pursuant to a 2013 final order of removal. The final removal order issued after Lin failed to attend his 2013 removal hearing. On the record before the Court, Lin has not been in contact with ICE since then. He now petitions for a writ of habeas corpus. He claims that ICE, by detaining him without prior notice, violated his due process rights. For the following reasons, the Court denies the petition.

**I. Background**[1]

  **A. Lin's Presence in the United States and Removal Proceedings**

Lin is a citizen of China. *See* Charles Decl. ¶ 2.

---

[1] This account draws on the following materials: Lin's petition, Dkt. 1 ("Pet."); the declaration of ICE deportation officer Michael Charles, Dkt. 12 ("Charles Decl."); and exhibits submitted by ICE related to Lin—to wit, an October 3, 2011 notice of appearance form concerning Lin's asylum application, Dkt. 11-1; an August 5, 2013 notice to appear (*i.e.*, Form I-862), Dkt. 11-2 ("NTA"); an August 8, 2013 referral notice concerning Lin's asylum application, Dkt. 11-3 ("Referral Notice"); a September 12, 2013 removal order, Dkt. 11-4 ("Removal Order" or "removal order"); a December 2, 2025 arrest warrant, Dkt. 11-5; a December 2, 2025 removal warrant, Dkt. 11-6 ("Removal Warrant"); and a December 2, 2025 immigration form, Dkt. 11-7 ("Form I-213").

Lin illegally entered the United States at an unknown time and location. Charles Decl. ¶ 3.

On March 6, 2012, Lin applied for asylum with the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 4; *see* Referral Notice at 1. On April 10, 2013, he did not appear for a scheduled interview with USCIS. Charles Decl. ¶ 5. Accordingly, on May 3, 2013, USCIS closed Lin's asylum case. *Id.* ¶ 6.

On August 5, 2013, USCIS issued a notice to appear (the "NTA"). *Id.* ¶ 7. The same day, it initiated removal proceedings against him by filing the NTA with the Executive Office for Immigration Review ("EOIR") and serving it on Lin by mail to his attorney's address of record. *Id.* The NTA charged him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* That provision makes a noncitizen present in the United States without admission or parole inadmissible. 8 U.S.C. § 1182(a)(6)(A)(i). The NTA required Lin to appear in immigration court at 26 Federal Plaza in Manhattan on September 12, 2013. NTA at 1.

On September 12, 2013, Lin did not appear for his scheduled removal hearing at 26 Federal Plaza. Charles Decl. ¶ 8. That day, an immigration judge found that: (1) Lin had been provided written notice of the hearing, including that failure to attend the hearing could result in a removal order issued *in absentia*; (2) he had not shown exceptional circumstances warranting nonappearance; (3) his nonappearance abandoned any applications for relief from removal, including for asylum; and (4) the Department of Homeland Security had adduced documentary evidence proving Lin's removability as charged in the NTA. *Id.*; Removal Order at 1. The immigration judge thus ordered Lin removed to China pursuant to 8 C.F.R. § 1003.26(c).

Charles Decl. ¶ 8; Removal Order at 1.  The removal order became administratively final upon entry that day.  *See* 8 C.F.R. § 1241.1(e).  Lin did not appeal.  Charles Decl. ¶ 8.

The record presented to the Court does not indicate any contact between ICE and Lin during the ensuing more than 12 years.

### B. Lin's December 2025 Detention

On December 2, 2025, at approximately 10:50 a.m., ICE arrested Lin at LaGuardia Airport and transported him to 26 Federal Plaza in Manhattan for arrest processing.  *Id.* ¶ 9.  During processing, ICE issued a removal warrant, pursuant to the final removal order.  *Id.*; Removal Warrant at 1.

That day, at approximately 4:19 p.m., ICE transported Lin from 26 Federal Plaza to Delaney Hall Detention Facility in Newark, New Jersey.  Charles Decl. ¶ 10.

Lin has a valid Chinese passport, which issued May 12, 2025 and expires May 11, 2035.  *Id.* ¶ 12.

### C. This Litigation

On December 2, 2025, at approximately 3:15 p.m., Lin filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241.  He claims that his ongoing detention, effected without notice to him, is unlawful.  Pet. ¶¶ 1–13.  On December 3, 2025, the Court set a briefing schedule.  Dkt. 6.[2]  On December 12, 2025, respondents (collectively, "ICE") opposed, Dkt. 13 ("Opp'n"), and filed supporting documents, *see* note 1, *supra*.  On December 17, 2025, Lin replied.  Dkt. 15 ("Reply").

---

[2] To preserve its jurisdiction, the Court directed ICE not to remove Lin from the United States during the pendency of this action.  Dkt. 6 at 1–2.

## II.     Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petition is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.  *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

## III.     Discussion

### A.     Jurisdiction

At the threshold, the Court must determine whether it has jurisdiction over this action.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (federal courts have "independent obligation to ensure that they do not exceed the scope of their jurisdiction").  ICE argues that 8 U.S.C. § 1252 strips this Court of jurisdiction.  According to ICE, Lin's petition amounts to an indirect request to stay the execution of his final removal order, which § 1252 precludes.  Lin counters that he is not challenging his final removal order, but merely the manner of his detention, in that it was effected without prior notice, such that § 1252 does not apply.

On this point, Lin is correct.  Section 1252 does not divest the Court of jurisdiction to consider Lin's petition.

Subsections 1252(a)(5) and (b)(9) channel, to appropriate courts of appeals, any "judicial review of an order of removal entered or issued" under that chapter.  And § 1252(g) provides that, except for such review by courts of appeals, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien

under this chapter." However, as "both the Supreme Court and [the Second Circuit] have explained, § 1252(g)'s bar on jurisdiction is 'narrow.'" *Öztürk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)) (cleaned up). It "does not preclude jurisdiction over the challenges to the legality of a noncitizen's detention." *Id.* at 397 (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)) (cleaned up). Claims of unlawful detention do not fall within the meaning of § 1252(g) merely because they arise in a "but-for sense" from, or "relate to," a decision by immigration authorities to execute a removal order. *Id.* Section 1252(g) does not bar a petitioner's challenge to the manner of his detention where such is "collateral to the Government's decision to execute the final order of removal." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 406–07 (S.D.N.Y. 2025).

    Here, Lin challenges the manner of his detention—*i.e.*, that he was detained "without notice." Pet. ¶ 1. He does not attack, directly or indirectly, any decision by immigration authorities to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Nor does he request judicial review of his removal order. *See id.* § 1252(a)(5), (b)(9). Section 1252 therefore does not bar this Court from adjudicating Lin's habeas petition. *See, e.g.*, *Zhu*, 798 F. Supp. 3d at 406–07 (§ 1252 did not strip district court's jurisdiction over habeas petition arguing that manner and length of petitioner's detention were unconstitutional); *Torres-Jurado v. Biden*, No. 19 Civ. 3595, 2023 WL 7130898, at *2–3 (S.D.N.Y. Oct. 29, 2023) (same where petitioner challenged ICE's authority to revoke stay of removal order without process); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (same, and stating: "district courts . . . have distinguished between challenges to ICE's discretion to execute a

removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not").[3]

### B. The Statutory Basis for Lin's Detention

On the merits, Lin argues that when ICE detained him on December 2, 2025 at LaGuardia Airport without notice, it violated his statutory rights and thereby his due process rights. Lin argues that ICE was statutorily required to detain him during the 90-day period after his removal order became final in September 2013 (the "removal period"). That period ended in December 2013. After that period, Lin argues, ICE retained the ability to seek his detention, but it was required first to place him on supervision, and to give him prior notice of its intent to detain him. Because ICE did not do so, Lin argues, it breached his constitutional rights and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

ICE does not dispute that the 90-day period after the order of removal issued, during which Lin's detention was mandatory, ended in late 2013. It counters, however, that that did not require it to have given Lin advance notice of his detention when it encountered Lin at the airport on December 2. It notes that Lin, having not appeared for his removal hearing or apparently since, had never been released on supervision. And, to the extent that Lin's claim amounts to a challenge to the duration of his detention following the December 2 arrest, ICE argues that Lin's detention of three-plus weeks thus far does not violate due process or any statute.

---

[3] *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344 (S.D.N.Y. 2019), which ICE cites in support of its argument that the Court lacks jurisdiction, is inapposite. The petitioner in that case sought to "stay his removal," arguing that the final removal order as to him was "premised on a defective charging document." *Id.* at 350. Recognizing that that challenge was "a sure, if indirect, attack on the removal order itself," the Court held that § 1252 deprived it of jurisdiction. *Id.* By contrast, Lin does not attack, even indirectly, the validity of his final removal order.

On the factual record here, Lin has not established a statutory or constitutional violation. The agency had statutory authority to detain Lin without notice when it encountered Lin at LaGuardia Airport. That is because Lin was subject to a final removal order and, having not appeared at his removal hearing or since, had never been released by ICE subject to conditions of supervision.

Under these circumstances, 8 U.S.C. § 1231(a)(6) gave ICE statutory authority to detain Lin. It states that certain noncitizens—including those subject to final removal orders, such as Lin—"*may* be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." *Id.* § 1231(a)(6) (emphasis added). Lin does not offer any case law supporting that his circumstances fall outside the discretionary detention authority supplied by that provision. Nor does he offer case law supporting the improbable proposition that—with his not having appeared at his removal hearing or evidently had any contact in the ensuing 12 years with ICE—ICE was required either (1) to give him advance notice, upon encountering him at an airport, before detaining him, or (2) to release him on supervisory conditions after it encountered him.

Lin instead invokes § 1231(a)(3) and (a)(2)(A). Section 1231(a)(3), Lin notes, provides that if a noncitizen is not removed from the United States within the 90-day period of mandatory detention and removal, he "shall be subject to supervision" under INA regulations. A noncitizen subject to such supervision "shall" appear periodically before an immigration officer, provide certain information under oath, and abide by reasonable restrictions on his conduct. *See* 8 U.S.C. § 1231(a)(3)(A)–(D). In contrast, Lin notes, under § 1231(a)(2)(A), during the 90-day removal period, "the Attorney General shall detain the alien."

The short answer to that argument is that these provisions—and the 90-day deadline set by § 1231(a)(1)(A) for ICE to remove the noncitizen—are self-evidently addressed to noncitizens accessible to ICE. Lin, however, did not appear for his removal hearing. And on the record at hand, there is no basis to treat him as having been accessible to ICE, such that it could have removed him during the ensuing 90 days.

Lin, in his reply, argues that the operative provision, § 1231(a)(6), required that he be placed on supervision before detaining him. Reply at 18. That is wrong. The text of that provision supports the opposite. It states that a covered noncitizen "may be detained beyond the removal period and, *if released*, shall be subject to the terms of supervision in [§ 1231(a)(3)]." *Id.* § 1231(a)(6) (emphasis added). Congress's use of the conditional term "if released" conveyed that not all noncitizens covered by § 1231(a)(6) would be released—the obvious alternative to release being detention. And there is nothing in § 1231(a)(6) that textually required ICE to give advance notice before detaining a noncitizen pursuant to this provision. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Lin also asserts that ICE's regulations required it to provide notice before detaining him. Reply at 9 (citing, *inter alia*, 8 C.F.R. §§ 241.13, 241.14, 241.4, 241.5). But these regulations do not apply to Lin, whom ICE had not previously detained and who therefore was not released on supervision. This case is thus far afield from recent ones in which this and other courts have found statutory or regulatory violations where ICE abruptly detained a noncitizen subject to a removal order and who had been released on conditions of supervision with which he or she had complied. In those cases, ICE failed to comply with mandatory procedures imposed by statute and/or regulation, including ones that required giving the noncitizen notice as to the basis for

8

renewed detention and a prompt opportunity to be heard.  *See, e.g.*, *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896, at *16, 23 (S.D.N.Y. Nov. 24, 2025) (ICE violated internal regulations in revoking order of supervision without giving noncitizen notice as to basis for doing so or prompt opportunity to be heard) (collecting cases).  Here, Lin does not claim, and the record does not indicate, that ICE had ever released him subject to conditions, such that his December 2, 2025 arrest could be said to violate governing regulations.  On the contrary, Lin failed to appear at his scheduled asylum interview with USCIS on April 10, 2013 and his scheduled removal hearing before an immigration judge on September 12, 2013.  Charles Decl. ¶¶ 5, 8.  The regulations ICE must follow in revoking a noncitizen's supervision do not apply to a noncitizen who has not been on supervision (and, on the record here, had been out of contact with ICE for well over a decade).

ICE thus lawfully detained Lin under § 1231(a)(6).  *See, e.g.*, *Piao v. Lyons*, No. 25 Civ. 1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) ("[T]he Court concludes, as [have] other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the [g]overnment's ability to detain Petitioner [without notice] for the purpose of enforcing that removal order at this time [*i.e.*, years later]"); *Callender v. Shanahan*, 281 F. Supp. 3d 428, 435–36 (S.D.N.Y. 2017) (denying habeas petition of noncitizen detained under § 1231(a) for "almost two and a half years"); *Lin v. United States*, No. 7 Civ. 26, 2007 WL 951618, at *3–4 (S.D. Tex. Mar. 28, 2007) (§ 1231(a)(6) authorized detention beginning years after removal order became final).

     **C.**    **Lin's Claims under the Due Process Clause and APA**

In light of the above, Lin's claim to have been denied due process fails.  Lin bases his due process claims on the "*Accardi* doctrine," Reply at 21, under which an administrative agency

must follow its own established rules and procedures, *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *Montilla v. I.N.S.*, 926 F.2d 162, 166–67 (2d Cir. 1991). But in light of the Court's finding that ICE—on the record at hand—did not breach any statute or regulation, that theory fails. *See, e.g.*, *Clarry v. United States*, 85 F.3d 1041, 1047–48 (2d Cir. 1996) (*Accardi* doctrine inapplicable because agency did not violate its regulations); *Sahin v. Bondi*, No. 23-8043, 2025 WL 2618924, at *1 (2d Cir. Sept. 11, 2025) (summary order) (same); *Saleh v. Blinken*, 596 F. Supp. 3d 405, 420 (E.D.N.Y. 2022), *aff'd*, No. 22-1168, 2023 WL 5091819 (2d Cir. Aug. 9, 2023).

Lin also claims, without developing the argument, that ICE's actions are *ultra vires* and therefore violate the APA. That is wrong, because ICE acted within its statutory authority.

Notably, Lin does not claim that the duration of his detention (three-plus weeks, to date) exceeds the period "reasonably necessary" to effect his removal from the United States. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (six months' detention presumptively reasonable). It clearly does not.[4]

## CONCLUSION

For the above reasons, the Court denies the petition.

The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

In light of the closing of this case, the Court's order at docket 6, prohibiting ICE from removing Lin from the United States, is no longer in effect.

---

[4] ICE states that it anticipates removing Lin to China "in the reasonably foreseeable future," as Lin has a valid Chinese passport and China, earlier this year, began "accepting removal of its own citizens from the United States." Charles Decl. ¶¶ 11–13.

10

SO ORDERED.

$\qquad$ *Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: December 29, 2025
      New York, New York